UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Case No. 13bk18697 |
| | ) | |
| SUBURBAN WEST PROPERTIES, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court is on the Motion of Debtor for Contempt Sanctions for Violations of the Automatic Stay and for Other Relief (the "Sanctions Motion") brought by Suburban West Properties, LLC (the "Debtor") against Ahad Real Estate, LLC ("Ahad"), Beach Business Bank ("BBB"), Macon Group, LLC ("Macon") and the state appointed receiver John Flanders Kennedy (the "Receiver"). With the exception of Ahad, which did not respond, the parties timely filed separate responses and supplemental responses to the Sanctions Motion. Upon a review of the parties' respective filings and after holding a hearing on the matter, the court finds that the postpetition actions in relation to 3680 Riverside Drive, Macon, GA 31210 (the "Property") and the payment made to the Receiver by the principal of the Debtor do not violate the automatic stay and accordingly denies the Sanctions Motion.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A request for sanctions for alleged violations of the automatic stay may only arise in a case under title 11 and, therefore, is a core proceeding. 11 U.S.C. § 363(k); 28 U.S.C. § 157(b)(2)(o); In re Glenn, 359 B.R. 200, 203 (Bankr. N.D. Ill. 2006) (Black, J.) ("[T]he cause of action for violating the automatic stay under section 362(k)(1) does not appear to have had a counterpart in eighteenth century England.").

Accordingly, final judgment is within the scope of the court's authority.

1

PROCEDURAL HISTORY

In considering the Sanctions Motion [Docket No. 26], the court has evaluated the arguments of the parties at the October 2, 2013 hearing on the Sanctions Motion (the "Hearing"), has reviewed and considered the Sanctions Motion itself, and has considered:

(1)  The Receiver's Response and Statement [Docket No. 61];

(2)  BBB's Response to Debtor's Motion for Contempt Sanctions for Violations of the Automatic Stay [Docket No. 77];

(3)  Macon's Response in Opposition to Debtor's Motion for Contempt Sanctions for Violations of the Automatic Stay and for Other Relief [Docket No. 78];

(4)  The Reply of Suburban West Properties, LLC to John Flanders Kennedy's Response and Statement [Docket No. 87];

(5)  The Debtor's Reply to Beach Business Bank's Response to Debtor's Motion for Contempt Sanctions for Violations of the Automatic Stay [Docket No. 89];

(6)  The Debtor's Reply to Macon Group, LLC's Response in Opposition to Debtor's Motion for Contempt Sanctions for Violations of the Automatic Stay and for Other Relief [Docket No. 92];

(7)  Beach Business Bank's Sur-Reply in Opposition to Debtor's Motion for Sanctions [Docket No. 95-1][1]; and

(8)  Macon's Supplemental Memorandum in Opposition to Debtor's Motion for Contempt Sanctions for Violations of the Automatic Stay and Other Relief [Docket No. 115].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

FACTUAL BACKGROUND

The Debtor alleges that the automatic stay with respect to the Property has been violated by Ahad, BBB, Macon and the Receiver.

---

[1]  BBB filed a motion for leave to file a sur-reply, in which the proposed sur-reply was attached as Exhibit A. The court granted the motion but BBB failed to file the sur-reply directly on the docket. As the motion for leave to file the sur-reply was granted, the court has considered the contents of the proposed sur-reply.

2

While the matter before the court is, ultimately, a disagreement between the parties as to the legal effect of certain prepetition and postpetition actions and not in essence a factual dispute, the facts in question are nonetheless integral to a ruling on the matter. As the arguments raised by the Debtor are based in large part in fact, the court considers here the facts as they have been presented:

(1) In 2010, BBB made a loan to Ahad for the purchase and operation of a Baymont Inn and Suites Hotel located on the Property. BBB took and recorded the original security deed (the "Deed") to evidence and secure the loan. The Deed provides that, should Ahad default, BBB may sell the Property at its discretion after first giving notice of the time, place and terms of the sale by advertisement, published once a week for four weeks.

(2) The Debtor became associated with the Property through its principal, Kenneth Moore (the "Principal"). On September 11, 2012, the Principal entered into a partnership agreement with Ahad for the purpose of conducting the general business of operating the Baymont Inn and Suites Hotel located on the Property. The partnership agreement stated that if the Principal desired for the partnership to acquire legal title to the Property, and such desire was agreeable to both parties and within ninety (90) days from the execution of the partnership agreement, the Principal was required to assume fifty percent (50%) of the outstanding indebtedness to BBB.

(3) Ahad defaulted on its loan payments due in October, November and December of 2012.

(4) In December 2012, Ahad and the Debtor entered into a franchise agreement with Baymont Franchise Systems, Inc.

(5) On January 13, 2013, BBB began foreclosure on the Property pursuant to the non-judicial foreclosure procedures set forth in the Deed and applicable Georgia law. BBB began publishing the four-week notice of foreclosure sale on or about January 9, 2013, announcing that a foreclosure sale of the Property was to be held on February 5, 2013.

(6) On January 15, 2013, BBB commenced litigation against Ahad in the Superior Court of Bibb County, Georgia (the "Superior Court") in a matter styled as *Beach Business Bank v. Ahad Real Estate, LLC* (the "Bank Case"), to install a temporary receiver and bar Ahad's use of the Property.

(7) On January 18, 2013, after having received notice of the foreclosure, Ahad quitclaimed its interest in the Property to itself and to the Debtor. The quitclaim deed was recorded on January 30, 2013.

(8) On February 1, 2013, Ahad sought a temporary injunction of BBB's foreclosure from the Superior Court in the Bank Case. On February 4, 2013, the Superior Court granted Ahad a temporary injunction. The parties and the behavior enjoined are not specifically identified, though the Superior Court did in the injunction order provide certain conditions on BBB outside of the injunction itself.

(9) On February 5, 2013, BBB "cried" the foreclosure sale on the steps of the courthouse, a procedure consistent with Georgia property law, and accepted the bid of the winning buyer, Macon. That sale gave rise to a Deed Under Power of Sale dated February 5, 2013 and recorded April 18, 2013, which reflects consideration of $1,200,000.

(10) On April 4, 2013, Ahad filed a separate lawsuit in the Superior Court, styled as *Ahad Real Estate LLC v. Kenneth Moore, Suburban West, LLC, et al.* (the "Receiver Case"), against the Principal, the Debtor and others, seeking a receiver to take possession of all assets and property, including the Property, from the Principal. The Receiver Case was assigned to the same judge as the Bank Case. The Superior Court entered an order that same day (the "Order Appointing Receiver"), temporarily restraining the Principal and appointing John Flanders Kennedy as the Receiver.

(11) On April 18, 2013, BBB and Ahad filed a stipulation dismissing the Bank Case with prejudice.

(12) That same day, the Superior Court heard in the Receiver Case the Receiver's allegation that the Principal had committed contempt by refusing to comply with the Order Appointing Receiver. Both the Debtor and the Principal were listed as defendants in the Receiver Case with respect to the contempt hearing. In that hearing, the judge, possibly unaware that the Bank Case had been dismissed earlier that day, issued an order clarifying the previous injunction and further enjoining BBB from foreclosing. This order was entered April 19, 2013.

(13) On April 22, 2013, the Superior Court ordered contempt sanctions against the Principal for refusing to comply with the Order Appointing Receiver in the Receiver Case. The Principal was ordered to pay a fine for the contempt charges.

(14) On May 1, 2013, the Debtor filed for bankruptcy, and the case was assigned to the undersigned. On May 2, 2013, the Principal filed for bankruptcy. That case is not before this judge.

(15) On May 17, 2013, the Superior Court entered an order in the Receiver Case withdrawing the April 19, 2013 order and validating Macon's Deed Under Power of Sale.

(16) On or about May 17, 2013, the Receiver received a check for $9,008.29 from the Principal's attorney, which was drawn from the bank account of the Principal's attorney's law firm. The check stated in the "For" line that it was for the Principal "Kenneth Moore." The Debtor is not mentioned. Payment was not the entire amount of the sanctions due, but the Principal did not pay his remaining debt.

(17) On June 11, 2013, the Debtor filed the Sanctions Motion, commencing the matter before this court.

(18) On October 2, 2013, this court heard oral arguments regarding the foregoing.

Aside from the legal effects, the foregoing facts are generally agreed to by the parties – though the court finds these facts to be true independent of any such argument. As a result, in order to determine whether the Debtor's protected interests were affected in any way, which if said protection were to be violated might afford the Debtor sanctions, the court need only address the basic, though mixed, questions of fact and law:

(1)   Was the February 5, 2013 foreclosure sale valid?

(2)   Was the April 22, 2013 contempt hearing and May 17, 2013 contempt payment with respect to the Debtor or the Principal?

DISCUSSION

The Debtor's request to enforce the automatic stay with respect to the Property is questionable, at best, because the Debtor's interests in that Property are questionable, at best.

The Debtor argues that it is entitled to the protections of the automatic stay with respect to the Property because, at the time the Debtor filed for bankruptcy, the Debtor retained title to the Property. The Debtor alleges that the February 5, 2013 sale never happened. Instead, the Debtor argues, the foreclosure sale was rescheduled to May 7, 2013. The Debtor supports this allegation with an email sent by John Wilkerson, a representative of BBB, stating that BBB planned to host a foreclosure sale for the Property on May 7, 2013. The Debtor also provides a Notice of Sale Under Power announcing a foreclosure sale for May 7, 2013.

The Debtor also contends that if the February 5, 2013 sale did occur, it was in violation of the February 4, 2013 injunction and in violation of Georgia law, and therefore void. The Debtor does not specify which Georgia law the February 5, 2013 sale violated and it is not this court's responsibility to find such argument. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). As a result, the Debtor concludes that the Debtor had title to the Property at the time the Debtor filed for bankruptcy and was therefore entitled to the protections of the automatic stay with respect to the Property. The Debtor also alleges that the Receiver conspired with Ahad and BBB to foreclose the Debtor's interest in the Property and thus willfully violated the automatic stay on the Property.

BBB, however, has a different view of how the facts should be interpreted. BBB alleges that the Debtor is not entitled to the protections of the automatic stay with respect to the Property because, at the time the Debtor filed for bankruptcy, the Debtor no longer had an interest in the Property. According to BBB, it properly served Ahad and noticed the February 5, 2013 sale as required by the Deed and Georgia law. BBB argues that, because the February 5, 2013 foreclosure sale to Macon was valid, Georgia law extinguished any title the Debtor may have had to the Property.

Macon agrees with BBB's proposed legal interpretation of the facts surrounding the February 5, 2013 foreclosure sale, and offers in support a copy of the Deed Under Power of Sale dated February 5, 2013.

With respect to the Receiver's alleged violation of the automatic stay in relation to the postpetition contempt citation, the Debtor argues that the Principal's payment of the contempt citation originated from the Debtor's funds and thus the procurement of that payment postpetition was a violation of the stay.

The Receiver, however, argues that, while both the Debtor and the Principal were listed as defendants in the Receiver Case and were both subject to contempt, the contempt sanctions were ordered against the Principal alone, and not the Debtor. The Receiver provides the court a copy of the check for $9,008.29 drawn on the Principal's attorney's account. That check states in the "For" line that it is for the Principal "Kenneth Moore." None of the Principal's entities, including the Debtor, are named. The Receiver argues that, because the Principal and the Debtor are separate entities and that the contempt sanctions were against the Principal only, the Receiver has not violated the automatic stay. The Receiver does not explain from where the funds in the Principal's attorney's account originated, but speculates that they were from the Principal or the Principal's attorney's law firm.

With respect to each of its arguments, the Debtor – as the movant – bears the burden of proof. *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993) (Squires, J.) ("Debtors had burden of showing willful violation of automatic stay by creditor and its attorneys."). It is not the obligation of this court to research and construct the legal arguments for the parties, especially when they are represented by counsel. *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986). It is instead the role of the court to examine the Debtor's request, determine each party's credibility, weigh the evidence and draw the proper inferences from the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

With that burden in mind, the court will consider each of the questions, in turn.

A.   <u>Was the February 5, 2013 Foreclosure Sale Valid?</u>

In order to answer this question, the court must look at the foreclosure sale itself and the effect thereon of each of the Superior Court's orders.

1.   <u>The Foreclosure Sale</u>

The Debtor argues that the February 5, 2013 foreclosure sale did not occur. The Debtor claims that the sale was rescheduled for May 7, 2013, and provides in support of its claim, a notice of sale and an email sent by John Wilkerson, a representative of BBB, each referencing that date. BBB contends in its sur-reply to the Debtor's Sanctions Motion, however, that it posted the second notice of sale because it had information which led it to believe that the Debtor was in possession of the Property at the time BBB gave its original notice of sale, and that Georgia law required the sale advertisement to include any person who may be in possession of the property.

After examining the record, this court concludes that the Debtor's allegation fails to rebut the clear evidence presented by BBB that the sale did in fact occur.

In states such as Georgia, sometimes referred to as "title states," the mortgagee takes legal title to mortgaged property pursuant to a security deed and is automatically entitled to possession of the property when the mortgagor defaults, and to a secured interest in the rents. *See* O.C.G.A. § 44–

14–60; *see also Butner v. United States*, 440 U.S. 48, 52 (1979) ("[T]he question whether a security interest in property extends to rents and profits derived from the property as one that should be resolved by reference to state law.").

A security deed transfers legal title to property conveyed to grantee, and grantor retains equitable title with equitable right of redemption by repayment of debt. *Howard v. The Citizens Bank of Cochran and Herbert Davis (In re Howard)*, 351 B.R. 251, 255 (Bankr. M.D. Ga. 2006). Thus, when Ahad granted the Deed to secure debt to BBB, it made an absolute conveyance of its legal title to the Property, retaining only equitable title.

When Ahad quitclaimed the Property, it could only convey what title it had – equitable title and not legal title. *See Drake, Jr. v. Citizens Bank of Effingham (In re Corley)*, 447 B.R. 375, 385 (Bankr. S.D. Ga. 2011); *see also Baker v. Humphrey*, 101 U.S. 494, 499 (1879). Thus, at best, the Debtor obtained a partial equitable interest in the Property by way of the quitclaim deed.

That equitable title was extinguished by the February 5, 2013 foreclosure sale, however. In Georgia, a properly conducted foreclosure extinguishes the grantor's equitable right of redemption. *In re Howard*, 351 B.R. at 255; *see also Bishop v. GMAC Mortgage, LLC (In re Bishop)*, 470 B.R. 633, 638 (Bankr. M.D. Ga. 2011). While the Debtor alleges the February 5, 2013 foreclosure sale did not occur or was invalid under Georgia law even if it did occur, in the court's opinion, the facts support the conclusion that the February 5, 2013 foreclosure sale did occur. Further, the court concludes that the foreclosure sale was valid under Georgia law. The sale was authorized under the Deed, properly noticed and conducted on the courthouse steps at the proper time. Macon is an arm's length purchaser who paid value and received a deed under power of sale in return.

It is important to note that the quitclaim deed under which the Debtor claims its interest is dated after Ahad, the grantor, had received notice of the foreclosure sale. Thus, at best, the equitable interest the Debtor received is one already subject to notice of a pending foreclosure. The Debtor could only receive what Ahad had to grant, *see In re Corley*, 447 B.R. at 385; *see also Baker*, 101 U.S. at 499, and thus the Debtor's interest was already in jeopardy. Put another way, the Debtor as grantee is charged with the previous notice to Ahad, the grantor. Such is consistent with Georgia law, which contains no provision for noticing transfers in transactions occurring after the notice date. *See* O.C.G.A. § 44-14-162. To hold otherwise would be to defeat the purpose of Georgia's non-judicial foreclosure law, allowing clever debtors to defeat foreclosure sales by an endless series of last minute transfers.

While BBB may have believed that the quitclaim transfer required the renoticing of the foreclosure sale, that belief is not binding on the actual legal effect of the sale. BBB's renoticing of the sale has no bearing on the validity of the sale that occurred.[2]

Even if the February 5, 2013 foreclosure sale was invalid, either due to a violation of the February 4, 2013 injunction or a violation of Georgia law, Macon retains both legal and equitable title to the Property as it is a bona fide purchaser. *See* O.C.G.A. § 23-1-20; *Mims v. West*, 38 Ga. 18, 21 (1968). Georgia law expressly provides that a bona fide purchaser for value's interest shall not be

---

[2] It is possible, of course, that such renoticing reflects not just BBB's understanding, but independently constitutes a recision of the February 5, 2013 foreclosure sale. The Debtor has not asserted this argument, and the court need therefore not consider it here. It is not the court's obligation to make arguments on behalf of the Debtor. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000).

7

assailed. *Brock v. Yale Mortgage Corp.*, 287 Ga. 849, 852 (2010). Macon is therefore protected against outstanding interests in land of which the purchaser has no notice. The Debtor failed to show that Macon had notice of the quitclaim deed. That quitclaim deed was dated January 18, 2013, but not recorded until January 20, 2013 – well after the notice of foreclosure had commenced. Nor has the Debtor shown that Macon had notice of the February 4, 2013 injunction at the time it purchased the Property for value. Macon's title to the Property is therefore irrevocable and valid under Georgia law.

As the February 5, 2013 transfer of title to Macon extinguished any title the Debtor may have had, the Debtor's allegation that subsequent acts with respect to the foreclosure violated the automatic stay has no legal support. A debtor can only bring into her estate that property for which she holds title, 11 U.S.C. § 541, and as the automatic stay provided by 11 U.S.C. § 362(a) protects only property of the bankruptcy estate, the Debtor here has no grounds to claim a violation of the stay relating to the Property.

For the foregoing reasons, the court concludes that – as a starting point and without considering the effect of the Superior Court's orders – the Debtor no longer had any interest in the Property after February 5, 2013.

2. The Injunction Order

Having considered the validity of the foreclosure in what is, essentially, a vacuum, the court must now consider what effect, if any, the Superior Court's injunction order of February 4, 2013, may have on that conclusion.

The Debtor's reliance on the February 4, 2013 order is problematic for a number of reasons. Chief amongst these is that the injunction is ambiguous as to whom or what it intends to enjoin.[3] Were this a federal court injunction, it would fail to be enforceable for those reasons alone. Fed. R. Civ. P. 60(d). As it stands, however, this court would have to examine Ahad's motion seeking the injunction to understand the injunction's scope. As the Debtor did not provide this court with the motion, this court cannot on the record before it conclude that the injunction has any real effect.

Even were the February 4, 2013 injunction valid, violations of injunctions generally are not void, merely sanctionable. *See, e.g.*, 18 U.S.C. § 401. The February 5, 2013 foreclosure sale to Macon would, therefore, not be void even if it took place in violation of an injunction.

Further, the Debtor lacks standing to seek enforcement of the injunction. It was not a party in the Bank Case in which the order was entered. In order for a third party to have standing to enforce an injunction, it must either be a party in the case in which the injunction was issued, or must have been the intended beneficiary of the injunction. *Flowers v. Leean*, 215 F.3d 1331 (7th Cir. 2000) ("[A third party] is not a party to the [separate] action, nor does he have standing to enforce the injunction as it was not ordered for his benefit."). Because the Debtor was neither a party in that proceeding nor the intended beneficiary from the Deed, it cannot bring claims against BBB. If claims are to be brought against BBB, they must be brought by Ahad.

---

[3] The injunction, states, in pertinent part, that "[t]he Defendant is granted an Interlocutory Injunction for the period of not less than Forty-Five (45) days from the date of this Order or until such time thereafter upon further motion of the Plaintiff and entry of an Order or the Final Judgment by this Court." No act is specifically enjoined and no affected party is specifically named.

8

Further, under Georgia law, a borrower who has executed a deed to secure debt is not entitled to an injunction against a sale of the property under a power in the deed, unless he first pays or tenders to the creditor the amount admittedly due. *Wright v. Intercounty Properties, Ltd.*, 238 Ga. 492, 493 (1977); *see also Oliver v. Slack*, 192 Ga. 7, 7 (1941). The Debtor did not provide to the court any evidence that Ahad paid or tendered to BBB the amount it owed. The court's record only shows that Ahad transferred what title it had to the Property to the Debtor through the quitclaim deed after Ahad defaulted on its loans and litigation for the Bank Case commenced. Nothing in the record, therefore, demonstrates Ahad's entitlement to have the Deed cancelled and the Property reconveyed to itself or the Debtor.

For the foregoing reasons, the Debtor has not sufficiently supported its allegation that the February 4, 2013 injunction had any effect on the validity of the February 5, 2013 foreclosure sale.

### 3. The April 19, 2013 Order and May 17, 2013 Order

The Debtor also argues that the Superior Court's April 19, 2013 and May 17, 2013 orders should be interpreted to mean that the February 5, 2013 foreclosure sale is invalid. The court does not agree.

In advancing this argument, the Debtor fails to recognize in the first instance the validity of the foreclosure sale – as discussed above. As the court has determined, that sale was valid under Georgia law and had the effect of divesting the Debtor of any putative interest in the Property. Further, as determined by the court, the February 4, 2013 injunction had no effect on the validity of the foreclosure sale.

In the April 19, 2013 order, the Superior Court clarified the February 4, 2013 injunction – adding much of the detail that was lacking in the original order – and enjoined BBB from foreclosing, though that foreclosure had already occurred. The order does not mention the February 5, 2013 foreclosure. It was unclear whether the Superior Court was even aware of it. Nothing in the April 19, 2013 order stated that the February 5, 2013 sale was void.

As the February 4, 2013 injunction had, in this court's opinion, no effect on the foreclosure, the court might easily conclude that the April 19, 2013 order also had no effect.

The April 19, 2013 order has independent problems. First, it was entered in a procedurally suspect manner. The record does not clearly indicate whether the April 19, 2013 order was entered in the Bank Case or the Receiver Case.[4] Its entry in either case would be inappropriate, however. At the time the April 19, 2013 order was issued, the case to which the order clearly pertains, the Bank Case, was closed. On April 18, 2013, Ahad and BBB filed a Stipulation to Dismiss the Bank Case, and the case was dismissed with prejudice. Bankruptcy courts are prohibited from entering orders in closed proceedings and cases. *The Home Insurance Company and George S. Rush v. Thomas Duckett Construction Company, Inc. (In re Rush)*, 49 B.R. 158, 161 (Bankr. N.D. Ala. 1985). The court has no reason to believe the same would not be true of a closed Georgia Superior Court case.

---

[4] The Superior Court chose to use a combined caption for the two cases. BBB asserts that the order was entered in the Bank Case, but provides nothing to support such a conclusion (other than, perhaps, its name listed as the plaintiff in the order and a checkmark in the caption next to the Bank Case's number).

9

The Debtor's assertion that the Bank Case was not ordered dismissed and was therefore open at the time the April 19, 2013 order was entered is not supported. BBB's voluntary dismissal of its action with prejudice constitutes a judgment. *Kent v. State Farm Mut. Auto. Ins. Co.*, 233 Ga. App. 564, 565 (1998). BBB did not need an order of approval from the Superior Court to close the Bank Case. The same would be true in a federal court matter.[5]

The April 19, 2013 order would be equally dubious if entered into the Receiver Case instead of the Bank Case. The order clearly pertains to the Bank Case and the earlier order entered therein. It is, perhaps, tautological that for an order to be valid, it must be entered in the same case for which it was intended. As noted above, the court is aware of no legal precedent allowing a judge to enter an order in a case other than the one before him.

Furthermore, the court cannot see how such an order could be found to have been entered without violating BBB's due process rights. In general, due process requires that parties must receive notice and an opportunity to be heard. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). The April 19, 2013 order, which clearly addresses matters in the Bank Case, was heard in the separate Receiver Case. BBB received no notice of this hearing, as BBB was not a party in the Receiver Case. As a result, the April 19, 2013 order cannot validly affect BBB's rights.

Even were the April 19, 2013 order valid and entered in the appropriate case, as noted above, it would not void the sale to Macon. Macon is a bona fide purchaser of value. *See* O.C.G.A. §§ 23-1-19, 23-1-20; *see also Brock*, 287 Ga. at 849. At most, the Debtor might under such circumstances be able to seek (in the Superior Court, not this court) contempt sanctions against BBB for violating the February 4, 2013 injunction, as clarified by the April 19, 2013 order. The Debtor, however, has no means of denying Macon title to the Property.

For all of these reasons, the postpetition May 17, 2013 order "validating" the February 5, 2013 sale could not, therefore, have violated the automatic stay. At best, it confirmed what this court has determined was already, independently, the case as to the February 5, 2013 sale to Macon.

B.  <u>Was the Contempt Hearing and Contempt Payment with Respect to the Debtor or the Principal?</u>

As was the case with the Property, in order to establish a stay violation and sanctions related thereto, the Debtor first must establish that the automatic stay applies.

With respect to the April 22, 2013 hearing (insofar as it related to sanctions), the Debtor has failed to establish that the hearing pertained to an interest of the Debtor. While it is true that the Receiver Case related to both the Debtor and the Principal and that the Receiver originally sought sanctions against both, by April 22, 2013, the Receiver was proceeding solely against the Principal. The order entered on the same day makes that clear as it related only to the Principal. Thus, other than with respect to the source of the funds to pay the contempt order, there does not appear to be

---

[5] Subject to Rules 23(e), 23.1(c), 23.2 and 66 of the Federal Rules of Civil Procedure and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1).

10

anything regarding the pursuit of sanctions against the Principal that implicates the automatic stay in this case.[6]

As to the funds received by the Receiver, the Debtor has failed to establish that the funds themselves or the circumstances under which the payment was made has any connection to the Debtor's estate. The Debtor's claim that it transferred the $9,008.29 to the Receiver out of fear of being held in contempt is unsubstantiated. The Superior Court's orders of contempt were directed at the Principal as an individual, not the Debtor. It was the Principal who was found in contempt and it was the Principal who was ordered to pay the fine. The funds appear to have been drawn from the Principal's attorney's account. Nothing other than argument connects that payment to the Debtor. It is well established that, absent extraordinary circumstances, the stay afforded a corporate debtor does not extend to afford protection as well to the debtor's stockholders, principals, officers, directors, and employees. *In re Arrow Huss, Inc.*, 51 B.R. 853, 856 (Bankr. D. Utah 1985). No such extraordinary circumstances are present here.

Even if the funds paid to the Receiver originated from the Debtor (which has not been conclusively established here), at best what exists is a potential misuse of corporate funds by the Receiver and a possible right of recovery of those funds by the Debtor's estate. The court cannot conclude that there has been a violation of the stay as it pertains to the Debtor and its estate.

## CONCLUSION

For the foregoing reasons, this court concludes that the Debtor has failed to establish a stay violation such that would afford it the right to sanctions and, accordingly, denial of the Sanctions Motion is appropriate.

A separate order will be issued concurrent with this Memorandum Decision.

Dated: November 26, 2013

_____
Timothy A. Barnes
United States Bankruptcy Judge

---

[6] It was previously noted that the Principal was also in bankruptcy. That case is assigned to another judge. The Debtor's arguments and the Receiver's defense regarding whether contempt is excepted from the automatic stay are best heard in that forum. It is not for this court to determine whether the stay has been violated in a case not before it.